ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| GRAND HOMES REAL ESTATE CORP. H/N/C KW GRAND HOMES APELADO V. CESAR SANABRIA GÓMEZ APELANTE | KLAN202400846 | *Apelación* Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan |
|---|---|---|
| | | Civil Núm.: SJ2021CV05368 |
| | | SOBRE: Cobro de Dinero |

Panel integrado por su presidente el Juez Figueroa Cabán, el Juez Salgado Schwarz y el Juez Monge Gómez

Salgado Schwarz, Carlos G., Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 16 de octubre de 2024.

Comparece ante nos el señor César Sanabria Gómez ("Sr. Sanabria o "Apelante"), quien nos solicita que revoquemos la Sentencia emitida el 29 de febrero de 2024 por el Tribunal de Primera Instancia, Sala Superior de San Juan ("TPI" o "foro recurrido"). Mediante dicho dictamen, el TPI declaró **Ha Lugar** la Demanda de Cobro de Dinero presentada por Grand Homes Real Estate Corp., ("KW Grand Homes o "Apelado"), y ordenó al Apelante a pagar la cantidad de $19,600.00, por incumplimiento del *Contrato de Opción de Compraventa*.

Por los fundamentos que exponemos a continuación, confirmamos la Sentencia apelada.

-I-

El Sr. Sanabria suscribió un acuerdo de exclusividad con la parte apelada con el propósito de vender una propiedad situada en la Urb. Punta Las Marías, Calle Bucare, núm. 110, San Juan.[1] Más adelante, el 17

---

[1] Véase Apéndice del recurso apelativo, pág. 119.

Número Identificador

SEN2024_____

de mayo de 2021, el Apelante firmó, electrónicamente, un *Contrato de Opción de Compraventa*[2] con el señor Luis Báez Black y la señora Gracielis Vega Bermúdez.

Sin embargo, diez días después, el Sr. Sanabria se retractó de la venta del inmueble por razones personales.[3] Ante ello, el 26 de julio de 2021, el representante legal de KW Grand Homes le envió una carta de cobro, en la que le solicitó el pago de la comisión acordada en el contrato por la cantidad de $19,600.00.[4] Además, se le indicó que este constituía "*un requerimiento formal y final para que se emitan los pagos correspondientes y vencidos hasta el momento…*".[5]

Por causa del incumplimiento del Apelante, el 19 de agosto de 2021, KW Grand Homes presentó *Demanda*[6] por cobro de dinero contra el Sr. Sanabria. El Apelado solicitó el pago de $19,600.00, junto con las costas, gastos y honorarios de abogado. El 19 de octubre de 2021, el Apelante presentó la *Contestación a Demanda*, en la que negó que haya firmado el contrato de corretaje aludido y que la firma que aparece bajo su nombre no es la suya. Además, levantó como defensas que el Apelado carece de legitimación activa para entablar la demanda y falta de parte indispensable, entre otras.[7]

Luego de varios trámites procesales, el 11 de noviembre de 2022, el Apelado presentó una *Moción en Solicitud de Sentencia Sumaria*.[8] Argumentó que el Apelante incumplió el contrato de opción de compraventa, por lo que le corresponde pagar la cantidad de $19,600.00

---

[2] *Íd.*, págs. 4-9.
[3] Véase Exhibit III del recurso apelativo, pág. 73 y 75.
[4] Véase Apéndice del recurso apelativo, pág. 11.
[5] *Íd.*
[6] Véase Exhibit I del recurso apelativo, págs. 1-3.
[7] Véase Exhibit II del recurso apelativo, págs. 15-22.
[8] Véase Exhibit III del recurso apelativo, págs. 23-75.

al Apelado. El Sr. Sanabria no se opuso a la petición presentada en el término dispuesto en la Regla 36.3(b) de Procedimiento Civil.[9]

Así pues, luego de examinar y acoger la *Moción en Solicitud de Sentencia Sumaria*, el 29 de febrero de 2024 el foro de instancia emitió Sentencia en la que hizo las siguientes determinaciones de hechos:

1. La parte demandada y el Sr. Rafael Santiago, corredor de bienes raíces de Keller Williams y quien listó el inmueble para la venta, firmaron un acuerdo de exclusividad (contrato de listado) titulado "*Autorización de Venta Exclusiva*" mediante el cual el demandado se comprometió y obligó a los acuerdos, términos y condiciones allí establecidos para promocionar y lograr la venta de su bien inmueble sito en la Urb. Punta Las Marías, Calle Bucare #110, San Juan, Puerto Rico 00913.

2. El 12 de mayo de 2021, el Sr. Jorge Hernández Julia, corredor de bienes raíces de los entonces prospectivos compradores, utilizando su correo electrónico, a saber, jhernandezjulia@kellerwilliamspr.com, como usuario, creó mediante la aplicación "Adobe Sign" el documento titulado "*Contrato De Opción De Compraventa*".

3. El susodicho contrato titulado "*Contrato De Opción De Compraventa*" cuenta con un historial generado automáticamente a través de la misma aplicación "Adobe Sign" en la cual se detalla y refleja: la fecha de creación del documento, el tracto de cuáles correos electrónicos se les envió dicho contrato, y a través de cuáles correos electrónicos de cada una de las partes se examinó el contrato y firmó el mismo (detallando fecha, hora, y el "IP Address" o "Internet Protocol Address" – que es una serie de números que identifican el acceso de un dispositivo electrónico a la red cibernética – de cada una de las partes envueltas).

4. El 17 de mayo de 2021, el Sr. César Sanabria Gómez, parte demandada, firmó electrónicamente vía la aplicación "Adobe Sign" todas las páginas del contrato titulado "*Contrato De Opción De Compraventa*" como parte vendedora.

5. El Sr. Luis Báez Black y la Sra. Gracielis Vega Bermúdez, quienes figuraba como parte compradora, firmaron e iniciaron electrónicamente el antedicho contrato titulado "*Contrato De Opción de Compraventa*" el 17 y 18 de mayo de 2021, respectivamente, a través de la misma aplicación "Adobe Sign".

---

[9] 32 LPRA Ap. V, R. 36.3(b).

6. El Sr. César Sanabria Gómez, parte demandada, utilizó la aplicación "Adobe Sign" para firmar electrónicamente el contrato titulado "*Contrato De Opción De Compraventa*".

7. El correo electrónico de la parte demandada es: cesarsana@gmail.com. La parte demandada admitió que este es su correo electrónico en su contestación al Primer Requerimiento de Admisiones cursado por los abogados que suscriben.

8. La parte demandada recibió a través de su correo electrónico antes mencionado el contrato de opción a compraventa titulado "Contrato De Opción De Compraventa".

9. Se desprende claramente del historial de la aplicación "Adobe Sign" que el demandado, recibió en su correo electrónico cesarsana@gmail.com el contrato de opción de compraventa el 12 de mayo de 2021, y el 17 de mayo de 2021 el demandado firmó electrónicamente el contrato de opción de compraventa.

10. Asimismo, se desprende claramente de la firma electrónica del demandado en el contrato de opción de compraventa que este firmó el mismo el 17 de mayo de 2021.

11. Posteriormente, el 27 de mayo de 2021 el demandado le cursó un correo electrónico al Sr. Rafael Santiago, en el cual indicó que por razones personales desistiría de la venta de su propiedad inmueble. El demandado admite haber enviado este correo electrónico al Sr. Rafael Santiago en la carta que posteriormente suscribió, fechada 12 de agosto de 2021.

12. Debido al desistimiento del demandado, los abogados del demandante le cursaron a este una carta por correo certificado, fechada 26 de julio de 2021, en la cual requirieron la totalidad de la comisión acordada en el Inciso 2 de la "Autorización De Venta Exclusiva", a raíz del incumplimiento del contrato de opción de compraventa suscrito entre este y los potenciales compradores.

13. En la carta fechada 12 de agosto de 2021, suscrita por el demandado y en respuesta a la reclamación de cobro de dinero aludida en el inciso anterior, este admite haber firmado dicho contrato de opción de compraventa previamente referenciado.

14. La versión en español de la Cláusula número 16 del contrato de opción de compraventa lee como sigue: "Si LOS COMPRADORES rehúsan formalizar la compra en los términos arriba indicados, el Depósito de Buena Fe será confiscado y la mitad se le entregará a LOS VENDEDORES y la otra mitad se le entregará a KW Grand Homes. Si LOS VENDEDORES rehúsan concluir la venta en los términos arriba indicados, la comisión según acordada en el contrato de

listado es inmediatamente adeudada por LOS VENDEDORES a KW Grand Homes".

15. En la comisión acordada en el contrato de listado previamente referenciado y titulado "*Autorización De Venta Exclusiva*" establece en su inciso segundo, en lo pertinente, lo siguiente: "LOS VENDEDORES acuerdan pagar a KW Grand Homes al momento del cierre, la comisión del cuatro por ciento (4%) del precio de la venta de la propiedad o $5,000.00, lo que sea mayor".

16. El precio de compraventa finalmente pactado en el contrato de opción, suscrito por las partes fue de $490,000.00, de cuyo valor se calculó el 4% por concepto de comisión, el cual asciende a: $19,600.00.

17. Como parte de los términos y condiciones a los que se obligó contractualmente el demandado, en el contrato de opción de compraventa, específicamente en sus Cláusulas 14 y 15, se definió expresamente lo que constituiría o no "justa causa" de frente al incumplimiento de dicho contrato. Las versiones en español de estas cláusulas leen como sigue:

"14. Todas las partes acepta que no constituirá justa causa: a) retrasos voluntarios en la entrega de documentos necesarios para la transacción, b) no tener fondos disponibles para el cierre de la venta, c) adquirir deudas adicionales posterior a la firma de este contrato, d) no poder verificar los ingresos, e) dejar de cumplir con los términos pactados, f) cambio de empleo u otras razones personales. 15. Constituirá Justa Causa para devolver el depósito de Buena Fe: a) denegación de préstamo luego de no lograr ser calificado por más de una institución, b) muerte súbita de la persona con quien compra, c) pérdida súbita de empleo y alguna otra causa similar de la cual pueda proveerse evidencia antes de proceder a la cancelación del contrato. De existir Justa Causa, según lo descrito anteriormente, se procederá a devolver el Depósito de Buena Fe menos una deducción por la cantidad de cuatrocientos cincuenta dólares ($450.00) por concepto de servicios administrativos incurridos por KW Grand Homes. Dicha devolución se realizará a no más tardar de siete (7) días laborables, una vez LOS COMPRADORES entreguen a KW Grand Homes la Carta de Denegación de las Instituciones Financieras".

Finalmente, declaró **Ha Lugar** la *Demanda* y le ordenó al Apelante el pago por la cantidad de $19,600.00.

Inconforme, el 12 de septiembre de 2024 el Sr. Sanabria presentó un recurso de Apelación ante este

Tribunal intermedio, en el que señaló la comisión de los siguientes errores:

### PRIMER ERROR

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DICTAR SENTENCIA CONDENADO [SIC] A LA PARTE APELANTE A PAGAR A FAVOR DE LA PARTE APELADA LA CANTIDAD DE $19,600.00 AUN CUANDO: (I) LA PARTE APELADA ES CORREDORA DE BIENES RAÍCES DE PROFESIÓN; (II) LA CLÁUSULA CONTRACTUAL EN LA CUAL LA PARTE APELADA BASA SU RECLAMACIÓN DE COBRO DE DINERO, NO SURGE EN EL CONTRATO DE CORRETAJE OTORGADO POR LAS PARTES TITULADO AUTORIZACIÓN DE VENTA EXCLUSIVA; (III) LA PARTE APELANTE NUNCA FIRMÓ EL CONTRATO DE OPCIÓN DE COMPRAVENTA PARA EL CUAL LA PARTE APELANTE NO APARECE COMO PARTE A PESAR DE QUE ES EL CONTRATO SOBRE EL CUAL EL APELANTE ALEGA QUE CREÓ LA OBLIGACIÓN CONTRACTUAL ENTRE EL APELADO Y EL APELANTE; Y (IV) LA PARTE APELANTE LE NOTIFICÓ A LA PARTE APELADA QUE DEJABA SIN EFECTO EL CONTRATO DE CORRETAJE TITULADO AUTORIZACIÓN DE VENTA EXCLUSIVA, AL NOTIFICAR QUE NO PODRÍA VENDER EL INMUEBLE, YA QUE EXISTIÓ FUERZA MAYOR OCASIONADA POR EL COVID 19, ENFERMEDAD QUE ATRAVESÓ EL HIJO MENOR DE EDAD DE LA PARTE DEMANDADA.

### SEGUNDO ERROR

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NO DESESTIMAR EL PRESENTE CASO DEBIDO A QUE LA PARTE APELANTE DEJÓ DE ACUMULAR COMO PARTES INDISPENSABLES A QUIENES ALEGADAMENTE OTORGAN EL CONTRATO TITULADO COMO "CONTRATO DE OPCIÓN DE COMPRAVENTA", EL SR. LUIS BÁEZ BLACK Y LA SRA. GRACIELIS VEGA; Y DEJÓ DE EXPONER UNA RECLAMACIÓN QUE JUSTIFIQUE LA CONCESIÓN DE UN REMEDIO EN LA DEMANDA PRESENTADA.

Examinados los escritos de las partes y los documentos que obran en autos, estamos en posición de resolver.

-II-

### A. Sentencia Sumaria

La sentencia sumaria es un remedio de carácter extraordinario y discrecional, el cual tiene como finalidad "propiciar la solución justa, rápida y económica de litigios civiles que no contengan controversias genuinas de hechos materiales".[10] Este mecanismo procesal no requiere la celebración de un juicio en su fondo, ya que, ante la inexistencia de controversias reales y sustanciales sobre hechos

---

[10] *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601, 610 (2023); *Const. José Carro v. Mun. Dorado*, 186 DPR 113, 128 (2012).

materiales, lo único que resta es dirimir las controversias de derecho.[11]

La Regla 36 de Procedimiento Civil de Puerto Rico regula todo lo relacionado a la sentencia sumaria[12]. La norma procesal permite a los tribunales dictar sentencia sumariamente cuando los hechos de un caso no están en controversia y el derecho favorece la posición de la parte que la solicita.[13]

Para adjudicar una controversia de manera sumaria, la parte que solicita el remedio deberá presentar "una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente", ya sea sobre la totalidad de la reclamación o parte de ésta.[14]

Sin embargo, nuestro Tribunal Supremo ha sido enfático en que ***solo procede que se dicte sentencia sumaria cuando surge de manera clara que, ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el derecho aplicable*** y el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia.[15]

A tenor, el promovente de la moción tiene que establecer su derecho con claridad y debe demostrar que no existe controversia en cuanto a ningún hecho material, o sea, sobre ningún componente de la causa de

---

[11] *Const. José Carro v. Mun. Dorado*, *supra*; *Vera v. Dr. Bravo*, 161 DPR 308, 331 (2004).
[12] *Íd*.
[13] 32 LPRA Ap. V, R. 36.1.
[14] *Íd*.
[15] *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981, 992 (2023); *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109-110 (2015).

acción.[16] En segundo lugar, la parte que se opone está obligada a establecer la existencia de una controversia que sea real en cuanto a algún hecho material y, en ese sentido, no cualquier duda es suficiente para derrotar la solicitud de sentencia sumaria.[17]

De ordinario, los tribunales están impedidos de dictar sentencia sumaria en cuatro instancias: (1) cuando existan hechos materiales y esenciales controvertidos; (2) cuando hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) cuando de los propios documentos que acompañan la moción surge que existe una controversia sobre algún hecho material y esencial; o (4) cuando como cuestión de derecho no procede.[18]

En cuanto al estándar revisor del foro apelativo ante este tipo de moción, el Tribunal Supremo ha precisado que *el Tribunal de Apelaciones utilizará los mismos criterios que el TPI al determinar si procede una sentencia sumaria*.[19] En ese sentido, el foro apelativo se encuentra en la misma posición que el TPI al revisar estas solicitudes.[20] No obstante, el Tribunal intermedio deberá limitar su revisión en dos aspectos, "no puede tomar en consideración evidencia que las partes no presentaron ante el Tribunal de Primera Instancia y tampoco adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo".[21]

---

[16] *Meléndez González et al. v. M. Cuebas, supra*, pág. 110.
[17] *Íd.; Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).
[18] *Serrano Picón v. Multinational Life Ins., supra*, pág. 992; *Oriental Bank v. Perapi et al.*, 192 DPR 7, 26-27 (2014).
[19] *Meléndez González et al. v. M. Cuebas, supra*, pág. 114.
[20] *Íd.*, pág. 115.
[21] *Íd.*, pág. 118.

Por último, en *Meléndez González v. M. Cuebas*, *supra*, el Tribunal Supremo recogió diversos aspectos importantes respecto a la revisión del Tribunal de Apelaciones de las mociones de sentencia sumaria. Entre estos, resaltan los siguientes:

(1) su revisión es *de novo* y debe examinar el expediente de la manera más favorable hacia la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor;

(2) debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición cumplan con los requisitos de forma que establece la Regla 36 de Procedimiento Civil, supra;

3) en los casos de revisión de sentencias dictadas sumariamente, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia y, de haberlos, debe cumplir con exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos;

4) por último, de encontrar que los hechos materiales realmente están incontrovertidos, debe entonces revisar *de novo* si el TPI aplicó correctamente el Derecho a la controversia.[22]

## B. Contratos

Las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes.[23] Es conocido que nuestro derecho contractual está cimentado en el principio de la autonomía de la voluntad y la libertad de contratación.[24] Dicho principio provee, según dispuesto por nuestro Código Civil, para que las partes contratantes establezcan los pactos, cláusulas y condiciones que tengan por convenientes, siempre que estas no sean contrarias a la ley, a la moral o al orden público.[25]

---

[22] *Íd.*, a las págs. 118-119.
[23] Artículos 1063 y 1233 del Código Civil, 31 LPRA sec.8984, 9754.
[24] *Guadalupe Solís v. González Durieux*, 172 DPR 676, 683 (2007); *Arthur Young & Co. v. Vega III*, 136 DPR 157, 169-170 (1994).
[25] Artículo 1232 del Código Civil, 31 LPRA sec.9753.

Para que un contrato tenga validez entre las partes contratantes, deben concurrir los siguientes elementos: consentimiento, objeto cierto que sea materia del contrato y la causa de la obligación.[26] Un contrato se perfecciona por el consentimiento sobre el objeto y la causa.[27]

Si los términos del contrato son claros y no dejan lugar a duda sobre la intención de los contratantes al suscribirlo "se estará al sentido literal de sus palabras".[28]

### C. Cobro de Dinero

Para prevalecer en una reclamación en cobro de dinero, "[e]l demandante solo tiene que probar que existe una deuda válida, que la misma no se ha pagado, que él es el acreedor y los demandados sus deudores".[29]

Por otra parte, nuestro Tribunal Supremo ha expresado que únicamente pueden reclamarse por la vía judicial aquellas deudas que estén vencidas, líquidas y que sean exigibles.[30] Sobre el particular, se ha añadido que:

> […] El vocablo "líquida" en relación con una cuenta, en lenguaje corriente significa el saldo "o residuo de cuantía cierta que resulta de la comparación del cargo con la data". Y la voz "exigible" refiriéndose a una obligación, significa que puede demandarse su cumplimiento.[31]

Así pues, la deuda es líquida por ser cierta y determinada,[32] y exigible porque puede demandarse su cumplimiento.[33] Por lo que, "al alegarse que la cuenta

---

[26] Artículo 1237 del Código Civil, 31 LPRA sec. 9771.
[27] *Íd.*
[28] Artículo 354 del Código Civil, 31 LPRA sec.6342.
[29] *General Electric v. Concessionaires, Inc.*, 118 DPR 32, 43 (1986).
[30] *RMCA v. Mayol Bianchi*, 208 DPR 100, 108 (2021).
[31] *Guadalupe v. Rodríguez*, 70 DPR 958, 966 (1950).
[32] *Ramos y otros v. Colón y otros*, 153 DPR 534, 546 (2001), citando a M.A. Del Arco Torres y M. Pons González, *Diccionario de Derecho Civil*, Navarra, Ed. Aranzadi, 1984, T. II, pág. 168; *Freeman v. Tribunal Superior*, 92 DPR 1, 25 (1965).
[33] *Guadalupe v. Rodríguez*, *supra*, pág. 966.

es 'líquida y exigible' se están exponiendo hechos, a saber: que el residuo de la cuantía ha sido aceptado como correcto por el deudor y que está vencido".[34]

-III-

Para el Apelante el contrato suscrito con KW Grand Homes no establece la imposición de alguna penalidad en caso de que el vendedor decida no concretar la venta del inmueble. Por si fuera poco, afirma que "no existe ningún otro contrato firmado entre la parte apelante y la parte apelada […]" que lo obligue a cumplir con la obligación que reclama KW Grand Homes.[35]

Sin embargo, argumenta que el contrato al que alude el Apelado no cumple con el Artículo 31 de la Ley para Reglamentar los Negocios de Bienes Raíces, ya que en ningún lugar se le apercibe que debe pagar la comisión si no se concreta el cierre. Por ello, entiende que no se justifica la reclamación, debido a que está basada en una cláusula contractual que es nula y contraria a la ley.

Por último, aduce que los comparecientes en el acuerdo, Luis Báez Black y Gracielis Vega, no son parte del pleito y que debieron ser incluidos como partes indispensables. No tiene razón.

De entrada, debemos señalar que el Apelante no se opuso a la *Moción en Solicitud de Sentencia Sumaria* que presentó el Apelado. Por consiguiente, después de examinar la prueba sometida por KW Grand Homes, concluimos que no existe controversia sustancial sobre algún hecho material y esencial. En consecuencia,

---

[34] *Íd.*
[35] Véase la pág. 13 del Recurso de Apelación.

corresponde revisar si el foro de instancia aplicó correctamente el derecho al pleito ante nuestra consideración. Por los fundamentos que exponemos a continuación, concluimos que sí lo hizo.

De una revisión *de novo* de las alegaciones y la evidencia sometida por KW Grand Homes, junto a su *Moción en Solicitud de Sentencia Sumaria*, surge que el Sr. Sanabria incumplió con lo pactado en el *Contrato de Opción de Compraventa*, al negarse a pagar la comisión acordada en la cláusula 11 y 16 del acuerdo, luego de retractarse de la venta del inmueble sin ninguna causa justificada según determinada en el mismo acuerdo.[36]

De dicho contrato, surge con claridad que, si los vendedores "rehúsan concluir la venta en los términos arriba indicados, la comisión (por $19,600.00) […] es inmediatamente adeudada por LOS VENDEDORES a *KW Grand Homes*".[37] Advertimos, que el acuerdo fue firmado e iniciado en todas sus partes por el Sr. Sanabria.

Ciertamente las alegaciones del Apelante son infundadas e inconsecuentes, pues no encuentran apoyo en la prueba sometida que demostró la obligación contraída por el Apelante. Es preciso destacar que el Sr. Sanabria tuvo la oportunidad de oponerse a la solicitud de sentencia sumaria y presentar prueba en contrario que refutara los hechos alegados por KW Grand Homes y no lo hizo.

Por tanto, concluimos que no erró el TPI al determinar que el Apelante incumplió con la obligación contraída y ordenar el pago por la cantidad adeudada.

---

[36] Véase Apéndice del recurso apelativo, págs. 66-67.
[37] (Énfasis en el original). *Íd.*, pág. 67.

## -IV-

Por lo fundamentos que anteceden, confirmamos la Sentencia apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones